UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

Paula Holcomb,

                            Plaintiff,

                                                                     **Hon. Hugh B. Scott**

                            v.

                                                                     12CV673A

                                                                     **Decision & Order**

State University of New York
at Fredonia, et al.,

                            Defendant.

_____

       Before the Court is the defendants' motion to compel discovery (Docket No. 50).

## Background

       The plaintiff, Paula Hocomb ("Holcomb") commenced this action against the defendants under Title VII of the Civil Rights Act of 1964 and various state statutes. Named as defendants are: the State University of New York at Fredonia ("SUNY Fredonia"), Karl Boelter ("Boelter"), Dennis Hefner ("Hefner") and Barry Kilpatrick ("Kilpatrick"). The plaintiff claims that Boelter made an inappropriate advance to Holcomb. (Docket No. 1 at ¶¶28-38). Holcomb claims that after she advised Boelter that she was not interested in a romantic relationship with him, he began to scrutinize her work and repeatedly sent her emails that questioned her integrity and honesty. (Docket No. 1 at ¶¶ 39-41). The plaintiff asserts that she also complained about policy changes which "devalued" her Wind Ensemble credit hours from 4 to 3. According to the

1

plaintiff, this policy change would have resulted in an increase in her workload. Holcomb complained to her union about this issue, which was ultimately resolved by a partial agreement between the parties. (Docket No. 1 qt ¶¶ 45-48). Notwithstanding, Holcomb advised Boelter and SUNY Fredonia Dean John Kijinski that she intended to file a grievance. (Docket No. 1 at ¶49). The plaintiff states that Boelter made comments to the faculty "evidencing his discontent" with her decision to seek union protection. (Docket No. 1 at ¶50). The plaintiff asserts that thereafter the defendants retaliated against her by stripping her of many responsibilities and demoting her (Docket No. 1 at ¶¶ 54-55); by increasing her workload (Docket No. 1 at ¶56); by making disparaging comments about her filing of a union grievance (Docket No. 1 at ¶ 59); by sending an email to all faculty in August of 2011 warning them to be careful about Holcomb[1] because she was taking legal action against the school (Docket No. 1 at ¶ 61); by admonishing her for not performing responsibilities that had been taken away from her (Docket No. 1 at ¶¶62-63); by describing her to colleagues as being "angry" and "hostile" (Docket No. 1 at ¶64); by limiting her ability to select performers for the Wind Ensemble (Docket No. 1 at ¶65); by removing her from a group working toward an exchange program with China (Docket No. 1 at ¶66); and by removing her from the position of Musical Director for a musical. (Docket No. 1 at ¶¶ 67-69). The plaintiff asserts that the defendants retaliated against her in violation of Title VII [Count 1], Title IX [Count 2], §1983 [Count 3], the New York State Executive Law [Count 4], and the New York State Labor Law [Count 5]. The defendants deny that any acts of retaliation were taken against Holcomb.

---

[1] Holcomb was joined in her grievance by a fellow faculty member, David Rudge ("Rudge"), whose work load was also allegedly impacted. The email sent to all faculty members purportedly warned the faculty of the possible legal actions by both Holcomb and Rudge. (Docket No. 1 at ¶ 61).

**Defendant's Motion To Compel**

The defendants seek to compel the plaintiff to produce two items of discovery. First, the defendants seek to have the plaintiff respond to deposition questions concerning her romantic interactions with colleagues as well as her understanding of what constitutes sexual harassment in the workplace. (Docket No. 52 at ¶¶ 4-7). In addition, the defendants seek to obtain discovery relating to the plaintiff's mental health records. (Docket No. 52 at ¶8).

Evidence of Other Relationships

Generally, under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party may obtain discovery of any non-privileged information "that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). However, Rule 412 of the Federal Rules of Evidence prohibits the use of evidence offered to prove that a victim engaged in other sexual behavior; or a victim's sexual predisposition. While this rule does not govern pretrial discovery, the Advisory Committee states that:

> In order not to undermine the rationale of Rule 412, however, courts should enter appropriate orders pursuant to Fed. R. Civ. P. 26(c) to protect the victim against unwarranted inquiries and to ensure confidentiality. Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery. In an action for sexual harassment, for instance, while some evidence of the alleged victim's sexual behavior and/or predisposition in the workplace may perhaps be relevant, non-work place conduct will usually be irrelevant.

Zakrzewska v. New School, 2008 WL 126594 at *1 (S.D.N.Y.,2008).

Here, the defendants seek to inquire into the plaintiff's relationships with colleagues "for the purpose of examining Plaintiff's state of mind as to whether romantic overtures, without

more, constitute sexual harassment. Defendants do not intend to inquire into Plaintiff's sexual behavior but rather whether Plaintiff dated other colleagues and how she responded to other colleagues' expressions of romantic interest." (Docket No. 52 at ¶¶ 7). According to the defendants this "is relevant because it is Dr. Boelter's alleged romantic interest in Plaintiff which forms the basis of this lawsuit." Id.   The plaintiff appears to argue that Dr. Boelter's conduct was so innocuous that it did not raise to the level of sexual harassment and that the plaintiff misconstrued Dr. Boelter's conduct.[2]  The defendants argue that the information is relevant to the plaintiff's "lack of understanding of sexual harassment within the work place, and the delineation between sexual harassment and a 'romantic advance.'" (Docket No. 51 at page 5).  The Court is not persuaded that plaintiff's subjective perceptions regarding her experiences with romantic overtures involving other colleagues is relevant to the question of whether the alleged actions attributed to Dr. Boelter constitute impermissible conduct under Title VII.  The Court notes that the plaintiff's claims in this case are all "retaliation claims" – based upon alleged conduct by the defendants in response to the plaintiff's filing of a grievance.  The plaintiff has not asserted a Title VII *quid pro quo* or hostile work environment claim against the defendants.  Protected activity for purposes of retaliation claims under Title VII, and the related state statutes, encompasses an employee's complaint to supervisors about alleged unlawful activity, even if the activity turned out *not* to be unlawful, provided that the employee "had a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII." Rodas v.

---

[2]   It has been held, as a matter of law, that not all romantic overtures arise to the level of sexual harassment. See Feliciano v. Alpha Sector, Inc., 2002 U.S. Dist. LEXIS 12631 (S.D.N.Y. 2002)(The level of the alleged harassment that took place, [being asked out on a date, an attempted hug, one suggestive remark and a kiss], does not rise to the requisite level of pervasiveness or severity) citing to Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998).  This question is not presently before the Court.

Town of Farmington, 567 Fed.Appx. 24 at 26 (2d. Cir. 2014) quoting McMenemy v. City of Rochester, 241 F.3d 279, 285 (2d Cir.2001). "The objective reasonableness of a complaint is to be evaluated from the perspective of a reasonable similarly situated person." Farmington, 567 Fed.Appx. 24 at 26 quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 17 (2d Cir.2013). Thus, Dr. Boelter's conduct may be fairly construed, for the purposes of the plaintiff's claims, by objective consideration of the facts and circumstances surrounding the alleged conduct itself – the interactions between the plaintiff and Dr. Boelter. The defendants have not demonstrated that the plaintiff's unrelated romantic interactions with other colleagues would assist the Court, construing the alleged conduct as a matter of law in the context of a dispositive motion, or a jury considering the conduct at trial, in the determination of whether the plaintiff had an objectively reasonable belief that Dr. Boelter's conduct constituted sexual harassment. The defendants have not demonstrated that comparing the plaintiff's response to a romantic gesture made by another colleague (who was not her supervisor) would inform the determination of whether Dr. Boelter's conduct crossed the line from romantic gesture to sexual harassment. Nor have the defendants demonstrated that discovery into the plaintiff's unrelated romantic experiences with other colleagues would lead to discoverable information relevant to whether Dr. Boelter's conduct was impermissible or not. The defendants' argument appears to challenge whether the plaintiff understands the *legal definition* of what constitutes sexual harassment as opposed to a romantic gesture. For example, the defendants argue that the "plaintiff claims retaliation based upon her decline of a romantic advance, yet she has refused to articulate the line between the sexual harassment and romantic interest or discuss her experiences and responses to workplace romantic gestures." (Docket No. 51 at page 6). To the extent that the defendants contend that the plaintiff does not know the difference between sexual harassment

and a non-actionable romantic overture, the defendants have not demonstrated that the plaintiff's understanding of this legal standard is the proper subject of discovery, particularly in light of Rule 412.  Based upon this record, the Court is not persuaded that the plaintiff's relationships with other colleagues are relevant to her claims in this case.[3]  The motion to compel the plaintiff to respond to questions relating to her romantic experiences with colleagues is denied.

The defendants also seek to compel the plaintiff to provide discovery relating to her mental health issues. The defendants argue that the plaintiff has put her mental health at issue by seeking damages for mental anguish, emotional distress and humiliation. Further, at her deposition, the plaintiff testified that she became "depressed" as a result of Dr. Boelter's conduct. Thus, the defendants contend, the plaintiff has asserted the mental illness of depression as a claim in this case (Docket No. 52 at ¶ 8).  Holcomb argues that she has asserted only garden variety mental anguish, emotional distress and humiliation and that she does not claim to have suffered any mental illness as a result of the defendants' conduct.  In a Declaration dated October 10, 014, the plaintiff explains:

> 3. During my deposition, I testified that as a result of defendants' unlawful retaliation, I have felt depressed, anxious, and down. When I described my feelings of depression in conjunction with other negative feelings, I meant that I felt dejected and dispirited by defendants' unlawful conduct, and used the term "depressed" colloquially.
>
> 4. I have not alleged or testified, nor will I at any point, that a doctor has diagnosed me with depression, that I am clinically depressed, or that I suffer from a mental illness. Further, I have not

---

[3]  The plaintiff cites to Cunninghman v. Town of Ellicott, 2007 U.S.Dist. LEXIS 24779 in support of the instant motion.  However, that case involved the question of whether testimony relating to the plaintiff's relationships with other workplace colleagues could be offered at trial. The decision cited by the defendants, which denied admission of such testimony at trial, does not reflect that the Court was ever asked to determine whether the plaintiff could be examined about other work-place relationships at her deposition.

>and will not request damages for emotional distress based on the "mental illness of depression."

(Docket No. 56 at ¶¶ 3-4).

The Second Circuit has held, in In re Sims, 534 F.3d 117 (2d. Cir. 2008), that the assertion of garden variety claims for mental anguish and emotional distress, without more, are not sufficient to place the plaintiff's mental health at issue so as to warrant discovery of the plaintiff's mental health records. Indeed, the Second Circuit held that "since [the plaintiff] made it clear that he will not offer any evidence as to his mental health, or any psychological disorder, or his fears, or any non-garden-variety emotional distress resulting from the alleged assault, etc., we conclude that it was not within the permissible limits of discretion for the district court to conclude that respondents would be prejudiced if [the plaintiff] were not required to disclose his mental health records." Sims, 534 F.3d. at 141. See also Woodall v. Pitchard, 2012 WL 1113605 (W.D.N.Y.,2012)(where a plaintiff withdraws "any claim to damages for mental injury or any non-garden-variety emotional injury," the plaintiff is not required to disclose his mental health records).

Here, the plaintiff has expressly denied any non-garden variety mental health issue relating to the defendants' conduct. The defendants are entitled to rely upon that representation. The defendants' motion to compel disclosure of the plaintiff's mental health records is denied.

In sum, the defendants' motion to compel (Docket No. 50) is denied in its entirety.

**Scheduling**

In light of the age of this case, the following expedited schedule shall apply:

1. This case has been referred automatically to the Alternative Dispute Resolution (ADR) program. The parties are encouraged to continue efforts to resolve this matter

      through the ADR program. The referral to mediation shall terminate on **July 31, 2015**.

2. **The referral of this case to mediation will not delay or defer other dates contained in this Scheduling Order and has no effect on the progress of the case toward trial**.

3. It appears undisputed that most of the discovery in this case has been competed. Any residual discovery in this case shall conclude on **May 15, 2015**.

4. The parties have previously advised the Court that there will be no experts retained in this case. Thus, it is unnecessary to set dates relating to expert discovery. (Docket No. 23-1, n.2)

5. Dispositive motions, if any, shall be filed by **June 15, 2015. If no dispositive motions are filed by that date, within 10 days of that date, the parties are directed to contact the Chambers of District Judge Richard J. Arcara to request a conference to set a trial date.**

6. No extension of the above cutoff dates will be granted except upon written joint motion, filed prior to the cutoff date, showing good cause for the extension.

Counsel's attention is directed to Fed. R. Civ. P. Rule 16(f) calling for sanctions in the event of failure to comply with any direction of this Court.

So Ordered.

                        */s/ Hugh B. Scott*
                    United States Magistrate Judge
                    Western District of New York

Buffalo, New York
March 20, 2015